Thank you, Your Honor. I would suggest that the 12B6 analysis, which lies at the center of this case, is actually only on the constitutional undercut. The main event, I would posit, is the constitutional rub between the conduct of the state executive branch and our federal constitution. It was said in Jones v. SEC, and I quote, to the precise extent that the mere will of an official or an official body is permitted to take the place of allowable official discretion, or to supplant the standing law as a rule of human conduct, the government ceases to become one of laws and becomes an autocracy. That's precisely what occurred here, Your Honor. The mere will and arbitrary power of a state governor and a state AG replaced the rule of law. I retreat. The payment here by the governor and attorney general of the attempt-based claims in the Messier case, while concurrently depriving the same payment to the Davis estate, plainly and simply implemented invidious arbitrary vexation and intentional discrimination. This is clear as day. In fact, in this case, Your Honor, we actually have 26 incorporated exhibits. Counselor. I'm sorry, Your Honor. I'm trying to ask you a question. Sure. At the heart of your argument is this notion that even if we agree with you that the executive acted by fiat in paying the Messier claim, that the federal court should order the executive to do the same thing in your case? Well, Your Honor, Monroe v. Pape and United States v. Classics, together with Shara v. Rhodes, teach us that the misuse of power by an executive or by a public official is the action of the state. And, you know, in terms of the transcript. And these defendants you've sued in their personal capacity, so you haven't even sued them in their official capacity. That's correct. We have not, because they engaged in street-level misconduct personally, each of them, because each of them received a demand letter under Medina, and each of them refused to respond to that demand. And simply, the demand was, you violated the law, you paid the intent-based claims in Messier. Violated again. Well, no, because they've created an executive fiat, and I would suggest to the court, as outlined in the brief, that the executive fiat, the payment of intent-based claims, can exist concurrently with the payment of claims under 258 Section 9. One is a vehicle to pay intent-based claims. The second is a vehicle to pay negligence-based claims. And in this case, the two can coincide. They did here. The governor and the attorney general agreed expressly to pay the Messier case. Now, we know in Messier. Can I explore this equal protection claim with you, counsel? Yes. It seems like you're asserting a class-of-one claim. Do you agree with that? I do not agree. And what is the classification that is at issue in this case if it is not a class-of-one claim? The classification that is at issue in this case is intent-based conduct undertaken by state employees against a victim which goes unpaid. But aren't you really claiming that the core of your case is my client was treated arbitrarily in relation to another person, and not because my client is black, is a woman, is a member of a particular ethnic group, but simply because he was subjected to irrational differential treatment? Isn't that what you're really claiming? Well, that is true, but that's in the context of a class here. Because we do know, according to the transcript in which the attorney general and the governor admitted in the hearing in the district court that the way that they assess these cases is they look at them pretrial, they try to avoid a determination by a court, and then But address the claim in the context of the elements of what you would need to establish to approve an equal protection claim. Well, you can either do it through a class-of-one, and I point the court's attention to the village of Olek and also the Caesars case. If it is a class, and Caesars, which was decided just a couple of months ago, is a very good case that explains the class-of-one requirement. And in that case, Justice Sotomayor had occasion to say, if the regulation at issue does not vest the governmental official with discretion, then it is subject to a class-of-one. And as what happened in the Messier case, quintessentially a discretionary judgment that the Caesars court says simply makes a class-of-one claim inapplicable to it. It's not. Because what they did, in effect, is they created new law. They had this law that says you can't indemnify if it's negligent conduct. They went ahead at that point in time and indemnified intent-based conduct. Now, when they did that, they did it through a fiat. It's as clear as day. They did it through a custom as well. Your complaint is based on a single comparator, right? It's comparing Davis, and then over a decade later, Messier. And it's saying, because Messier was treated one way, in your view, that is similar to the situation that your client faced, you're entitled to the same treatment. That's the core of your equal protection claim, isn't it? It's not a class-of-one, though, Your Honor. And I suggest that the hearing transcript bears me out in this regard. Often, the attorney general and the governor, by their own admission, will assess these cases before a determination has been made by any court. Now, when you do that, the statute doesn't even permit that. The statute says whether it's a settlement or it's a judgment, it can't be effectuated if it's intent-based. But isn't there a rational basis to treat these two cases very differently? Your client's case is a case in which there had been a judgment for punitive damage entered, which the state refused to indemnify the defendant against. The Messier case was a settlement of a suite of claims that included some claims that might not be subject to indemnification and other claims that would potentially be subject to indemnification. The discretionary decision to settle a claim as occurred in Messier is vastly different from the decision whether to indemnify or not a punitive damage award. Isn't that right? Not at all, Your Honor. Why not? Both of them are intent-based claims. And we've got to keep in mind, on April 30th of this year, this attorney general, her office, obtained indictments against three of the defendants in Messier, intent-based conduct. They were all indicted under 265 section 13 and 265 section 37. Moreover, in terms of the fiat here, they announced this fiat. We don't know anything else about this fiat. All we know at this point in time in terms of FCC, and we're entitled to have notice about any laws so that people can govern their conduct accordingly, we don't know anything about it. What we do know is it pays intent-based claims. Jason Davis and Mr. Messier involuntarily committed impatience at a Massachusetts institution. Both of them were subject to violence in a restraint that when arrived, both of them were acutely ill, and both of them thought that they were going to die when the restraint occurred. One did, one didn't. But given that the articulation of this fiat was done, all we know is that intent is at the baseline here. In terms of FCC, all we really need here to equivocate ourselves with Messier, all we need is intent. Now, we go on from that. We have in effect here what amounts to an avalanche of evidence. Do you have any other examples in your pleading of instances in which, in your view, the state improperly indemnified someone for punitive damages under circumstances similar to your case? It's in the transcript here. No, but in your complaint, you cite Messier, you base your case solely on Messier as far as I can tell. Is that right? Well, we also have the situation that Governor Romney passed a bill in Massachusetts to indemnify a person for intent-based civil rights claims. So I suggest to the court that whether we go with class of one or whether we don't go with the class of one, Jason Davis is in, because Jason Davis and Joshua Messier sit in the same bucket. You've got two kids in the backyard, you give one an ice cream cone, the other one gets one, too. You've got two types of claims, one equal protection and the other due process, right? In each count. Yeah, right, but just two constitutional provisions, right? Three, actually. We also have asserted, I believe it's paragraph 366 of count two, a liberty interest in the fair and impartial administration of the law. All right, let me focus on the due process claim for a second. What's the property interest that's at issue in your due process claim? The indemnification right under the FIAT and the custom. Well, you agree that the statute doesn't give you a right to indemnify. We don't go under the statute. We go under the FIAT here. Now, the statute... There's a state-protected property interest in what you're calling a FIAT? Absolutely, because when they articulated the FIAT, it stood on its own fours. You can't draft from 258 the requirements there, because you know something? It's ironic that the AG and the governor assert you can't, because if you did, then their claim could not have been paid. This is intent-based conduct. We have a death certificate. We have a report of autopsy. We have blunt force trauma. We have brain bleeding. We have a homicide. The medical examiner, who in effect is an expert here, she drew conclusions of science, and she said that this was a homicide. There's no way to escape... Counselor, any more questions? No. All right. Thank you. Thank you, Your Honor. May it please the Court, Helene Kazanjian from the Massachusetts Attorney General's Office on behalf of Martha Coakley and Deval Patrick. The appellant has provided no basis for reversing the district court's dismissal of the complaint in this action. Judge Young properly found that the appellants had not stated a valid claim under either the Due Process Clause or the Equal Protection Clause. In order to make out a claim under the Due Process Clause, the appellants must demonstrate that the appellees subjected them to deprivation of a federally protected right. And appellants concede that there is no federally protected right in indemnification. They claim that by virtue of settling the Messier case, that the Commonwealth somehow created a federally protected right that they are entitled to, and presumably other civil litigants are entitled to, based on the settlement of that case. That there is no authority for that proposition, and it does not state a claim. The government, Commonwealth, did in fact settle the Messier case properly. There was nothing wrong with the settlement of that case. The appellant's counsel is incorrect that intent-based claims cannot be indemnified. Under Chapter 258, in fact, Section 9 provides for indemnification of public employees for intentional torts and for civil rights violations. Well, the Massachusetts Supreme Judicial Court has specifically said that the statute covers, allows for indemnification of intent-based, but distinguishes those that amount to punitive damages. Correct. So the point of Section 9 is actually to deal and address with intentional torts and civil rights violations. And there's broad discretionary power, as the Supreme Judicial Court has said, that it is in the discretion of the Commonwealth, of the public employer, to determine and decide whether to indemnify under most instances. And there is great public policy for a broad indemnification of public employees to encourage and to support a public service. But there are some limitations on the Commonwealth's ability to indemnify its employees. In Section 9, which is at issue here, in the context of intentional torts, the limitation is only that the employee has to have been acting within the scope of their employment. With respect to civil rights actions, both the employee has to have been acting within the scope of their employment, and the content cannot have arisen to the level of grossly negligent, willful, or malicious. And it is up in the discretion of the Commonwealth to make the determination, and the public employer to make the determination, unless and until there is a judicial finding. Once there is a judicial finding, as there was in the Davis case, that then would prohibit the Commonwealth from indemnifying for the punitive damages. But what's important also here is that the Commonwealth settled the Messier case with an eye towards litigation risk, both in the intentional tort claims, the civil rights claims, all of which was looking at what would be the potential compensatory damage award that the Commonwealth might have to pay, and what was the cost of litigation and all the various factors, obviously lawyers take into consideration in settling a matter. But what was at issue was compensatory damages. We're looking at what we might have to pay for compensatory damages. The Commonwealth paid compensatory damages in the Davis case. They paid the $100,000 plus the fees that were associated with the one defendant for whom the jury did not award punitive damages. So there is really nothing different about the way that the two cases were handled. They were handled consistent with the statute, and they were handled consistent with the law of the Commonwealth. I think the appellant's argument is that the conduct at issue in Messier is so obviously extreme that any payment could only have been a payment for something that amounts to punitive damages. I may not have that right, but if that's what he's saying, what's your response to that? Okay, so there are nine individual defendants in the Messier case, and it is true that the conduct that has been alleged, some of it is extreme, and certainly the way that the appellants have alleged in the complaint is extreme. But there are no findings at this time, judicial findings, that anyone engaged in conduct that would amount to punitive damages. Plus, only three of the nine Messier defendants have been indicted by the special prosecutor in the inquest process. So there are six other individuals for whom the Commonwealth could indemnify, for which the conduct is not at all necessarily so extreme that one would compel an award of punitive damages. Isn't the key distinction between the two cases in one, in Davis there was a judgment for punitive damages, and you were statutorily barred from paying that. But in the Messier case, it was settled before trial. There had not been an adjudication of those claims, and you had to bring judgment to bear about what your potential exposure was as to indemnifiable claims and non-indemnifiable claims. That's correct, and it is a discretionary decision up until the point where there is a judicial finding, and that's why the distinction is important here, and it's important to understanding that there was not arbitrary conduct here by either of the appellees in this case. I would like to bring to attention an additional case that I found in getting ready for the court, and I can submit a 28-J letter as well on this. The Filippone v. Mayor of Newton case, which is at 392 Massachusetts 622, is a case that deals with, talks about how it is at the discretion of the public employer to determine whether the conduct was grossly negligent, local, or malicious through the process. Of course, once again, it's been submitted to a jury, and there is no more discretion. I also want to note that in terms of the equal protection claim, these parties are not similarly situated in many ways, but in the way that we've just spoken about, which is that there was a judicial finding in the Davis case and there was not one in the Messier case, but the parties were really treated the same because the Commonwealth offered settlements to both, and it is in the record and part of the complaint that the Commonwealth offered settlements to both parties. And the only difference is that Mr. Davis and his lawyer refused the settlement and chose to go to trial, whereas the Messier defendants agreed to take the settlement. So in both cases, the Commonwealth attempted to settle the matters and attempted to pay. And in fact, the settlement that was offered, and it's in the record, to the Davis estate, or to Mr. Davis because he was alive at the time, was $500,000. The jury only awarded $100,000, but that was a choice that he made at the time. I also want to say just that even if the settlement in the Messier case is somehow incorrect, the remedy is not to then make that same mistake in all other litigation matters, including matters that happened back in 1998, that happened today, that happened in the future. The point is that it is discretionary and it is limited to that case. Finally, on the equal protection claim, not only are they not similarly situated, but there is not enough alleged here to show that there was any selectivity based on any impermissible considerations, such as race or religion, and also not enough alleged to show any kind of malicious or bad faith intent to injure Mr. Davis by these individuals that are sued in this case, Martha Coakley and Deval Patrick. So on behalf of Deval Patrick and Martha Coakley, unless there are any other questions, we would ask that this Court affirm the order of the District Court and dismiss the action. In terms of the statute itself, it's real clear. 258 section 9, in relation to a non-constitutional officer, state employee tort visa, you cannot indemnify him. The case that was raised in terms of the AG, that case actually states that. And the thing about punitives here, it's not a magic wand. Punitives are not allowed under 258 section 9 for one reason. It's intent-based conduct. Interestingly, the governor in 2008 turned us away because it was intent-based conduct. He said, no, it's intent-based conduct, you can't do it. You can't graft the punitive piece from 258 into the fiat. That itself is unconstitutional because we didn't have notice that all these requirements over here are going to be thrown into this new law. In terms of agenda here, in terms of discrimination, nine ways to Sunday. Spite, whimsy, political agenda, revenge, the whole nine yards. July 11, 2014, Governor Patrick vetoed the Davis bill. He vetoed it, and he said in that bill, these types of claims are not paid in this state. After just having agreed to pay intent-based claims in Messiaen. Thank you. Thank you, Your Honor.